**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

Appeal of Pidgeon          }
                                    }
                                    }      Docket No. 80-5-03 Vtec
                                    }
                                    }

Decision and Order

Appellants Paul S. Pidgeon and Joan K. Pidgeon appeal from a decision of the Development Review Board (DRB) of the Town of Brandon, affirming the Administrative Officer= s decision to deny Appellants= application for a change of use in the uses allowed on the property to add the servicing of vehicles (automobiles). Appellants are represented by Karl W. Neuse, Esq.; and the Town of Brandon is represented by James F. Carroll, Esq. Although this matter was scheduled for a site visit followed by a trial on September 30, 2003, at the site visit the parties and the Court agreed that the parties would submit the matter on its merits by supplying their respective memoranda and agreed facts, in writing, without an evidentiary hearing.

Appellants own a 143-acre parcel of property located on the west side of U.S. Route 7[1] in Brandon, Vermont. The portion of the property near Route 7 is located within the Low Density Multi-Use (LDMU) land use district[2] and other portions of the property are located within the Conservation land use district. All the existing buildings on the property, including the proposed use, are within the LDMU district. The copy of the Brandon Land Use Ordinance provided by the parties shows that the Ordinance was amended in February 1999, after the date of Appellants= first permit. However, its footnotes show which sections were amended after the issuance of Appellants= 1998 permit, and it appears that none of the amendments are relevant to the application at issue in the present case.

Appellants obtained Permit No. 3569 in the summer of 1998. It allowed them:

A to change the use of the existing barn as a second primary structure on the lot to include agricultural use; agricultural support uses as farm equipment sales and repairs; general commercial use as an auto accessory[3] store; light industry use as wholesale business and storage. Further use of the property to include weekly auctions covering the above mentioned items.@

It went on to lay out the outdoor display areas and unloading area as specified in the site plan, and to allow the display of used vehicles[4] for auction on auction night only and limited to no more than six vehicles per auction. It allowed the installation of two signs and four portable storage units. Important for the purposes of the present application, the 1998 Permit specifically stated: A [t]his permit does not allow the operation of a used vehicle sales and service business.@

In July of 2002, Appellants received Permit No. 4223, authorizing the construction of a 60' x 35' addition to the existing barn for A the continued purpose of storage, auctions, equipment repair and parts store.@ The permit noted that Permit No. 3569 was still in effect. This permit was amended in September of 2002 as Permit No. 4255, only changing the size of the addition to 60' x 45'; it also stated that Permit No. 3569 remained in effect.

In February 2003, in the application that is the subject of the present proceedings, Appellants applied to change the use of the existing barn on the lot to add the A service of vehicles - automobiles.@ In the space reserved for the Administrative Officer= s comments, Appellant[5]

argued that it should be considered a > light mechanical= use or > service store= use or > agricultural accessory= use, all of which are allowed as permitted uses in the LDMU land use district. The Administrative Officer denied Appellants= application, stating that the servicing of automobiles falls instead within the use category of > highway-oriented commercial= uses, ' 410, and is prohibited in the LDMU land use district. ' 402. On appeal to the DRB, the DRB affirmed the denial of this application. As described in the DRB decision, Appellants propose A to operate an auto repair garage for vehicles, trucks and automobiles. The activities will include changing oil and filters, along with working on brakes, mufflers, and tires.@

Appellants operate a beef cattle farm, sell and service farm equipment, operate an auto parts store, and sell at wholesale vehicle and farm equipment parts, including gas tanks, tires and radiators. Appellants propose to service vehicles, including A oil changes, tire changes, gas tank, radiator and windshield replacements.@

Application analyzed under subcategories of the General Commercial Use category

Appellants argue that the application for the service of vehicles should be considered as a > light mechanical repair store= use or a > service store= use, under ' 407: General Commercial Uses. Neither the installation of parts nor the servicing of vehicles qualifies as a > light mechanical repair store= use or a > service store= use as defined under that section. The use category of > light mechanical repair stores= is defined by example of the repair of small items such as A watches, cameras, bicycles,@ and televisions, none of which is similar to automobile repair and service. The use category of > service businesses or stores= is defined by example of A catering, duplicating, photography, shoe repair, tailoring, travel agency, [and] upholstering,@ none of which is similar to automobile repair and service. Most importantly, the use categories of > vehicle repair= , > vehicle sales, supplies and services= , and > all other similar highway-oriented commercial uses= fall squarely within the use category of A Highway-Oriented Commercial Uses,@ ' 410. Unfortunately for Appellants, those uses are not allowed in the LDMU land use district.

The Court recognizes that Appellants= property is located on Route 7, the major regional highway in the area, and that nearby property is classified in either the > highway commercial= or the > high-density multi-use= land use districts. It may make sense from a land-use perspective for the land use map to be amended to add a portion of Appellants= property to one of those districts. However, until and unless that is done, or until > highway-oriented commercial uses= are added to the LDMU land use district as at least a conditional use, Appellants= application must be denied as it does not fall within any of the general commercial use categories of ' 407.

Application analyzed as an accessory use to the auto parts business allowed by the 1998 Permit

Appellants also argue that because they hold a valid permit to operate an auto parts store, they should also be allowed to install parts in and to service vehicles as an A accessory@ part of that business. The Town contests this interpretation and also argues that the Court should not consider it as it was not raised by Appellants in their application. However, that application is being considered de novo by this Court. Appellants applied for approval of the addition of vehicle servicing to the multiple uses they are permitted on the property, and they are entitled to have the Court consider it on any theory that is within the scope of their application[6].

To qualify as an accessory use it must be > customarily incidental= to the primary or allowed uses. ' 501. The parties have submitted an agreed list of businesses located in the Burlington-to-Rutland region characterized as those A that are auto accessory stores (selling only parts and accessories) and those that provide auto service in addition to the sale of auto parts and accessories.@ Unfortunately, the list appears to include businesses for which the primary use category is auto service, rather than only those for which the primary use category is the retail or

wholesale sale of auto parts and accessories. This confuses the evidence, as all automobile service businesses, whether within dealerships or independent, must necessarily provide the parts necessary to the requested service, as well as providing the repair services to their customers. The question is whether stores that sell general auto parts, or tires, or windshields, or batteries, also customarily install those parts or accessories in their customers= vehicles, and whether they customarily do other repairs on those vehicles, unrelated to the parts purchased. The parties have provided very little of that information.

From the little evidence provided, and focusing on those businesses on the list that can be distinguished from their names as not being either dealerships or auto repair/service businesses, the installation of accessories and parts sold to customers at an auto parts store does appear to fall within the scope of work customarily provided at an auto parts store, but only incidental to the sale of parts and accessories from that store.

Thus, as an accessory use to their auto parts store use, Appellants may install the accessories and parts that they sell. However, Appellants may not further service the vehicles beyond the installation and may not provide general servicing of vehicles[7], unrelated to the installation of the accessories or parts they sell.

Accordingly, Appellants= application is granted by this Decision and Order **only to the extent that** they may install auto accessories and parts purchased by customers of the auto parts business authorized in Permit No. 3569. This decision is without prejudice to any future application they may wish to make to amend their permit or to apply for additional uses on their property, and is without prejudice to any other effort they may make within the ordinance amendment process of the town to amend the use categories or land use district boundaries applicable to their area.

Done at Barre, Vermont, this 30th day of January, 2003.

_____
Merideth Wright
Environmental Judge

---

### Footnotes

[1.] The 2002 permits and the present application show the address as 2510 Grove Street.

[2.] We note that the definition of the LDMU district in §301(I) suggests that typically roads in that district are typically unpaved or unimproved, while the High-Density Multi-Use and Highway Commercial districts are characterized by being adjacent to major highways such as Route 7. However, the Town has defined the district boundaries in its ordinance and an ordinance amendment would be required to change the land use district applicable to this property.

[3.] This approved use is referred to as an 'auto parts store' in some documents. Due to the potential for confusion with the later discussion of 'accessory use,' this decision will use the term

'auto parts store' to refer to the automotive parts and accessories business allowed under the 1998 permit and to the use categorized as "auto accessory stores" in §407 of the Ordinance.

4. Oddly, although the approved uses do not include passenger vehicles, and the auction approval only covers the "above mentioned items," it is clear from the remainder of the permit that there was an unloading area for trucks and that the auctions were expected to involve up to six "used vehicles" per auction.

5. It appears that that note is in Mr. Pidgeon's handwriting; an additional note below it is in a different handwriting, dated and initialed by the Administrative Officer.

6. Appellants did not in their application seek to amend the 1998 permit to delete the prohibition against a vehicle sales and service business.

7. The Court recognizes that this condition may be difficult to enforce. However, the problem arises from the use categories provided in the Town's Land Use Ordinance (and the notable scarcity of conditional use categories in the ordinance, which would allow the DRB and hence this Court to impose specific conditions). Landowners have the right to use their property to the full extent allowed by their permits and the Town's Land Use Ordinance, not more, but also not less.